UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICKEY CALHOUN,

Plaintiff,

v.

SPECIAL COMMITMENT CENTER,
WASHINGTON STATE DEPARTMENT OF
SOCIAL AND HEALTH SERVICES *et al.*,

Defendants.

Case No. C08-5101RBL/JKA

REPORT AND RECOMMENDATION

**NOTED FOR:
February 20, 2009**

This civil rights action has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4. Plaintiff brings the action pursuant to 42 U.S.C. 1983, 1985, 1986, and 1997. Before the court is defendant's motion for judgment on the pleadings. The motion is brought pursuant to Fed. R. Civ. P. 12 (c) (Dkt. # 81).

Defendants previously moved for a more definite statement (Dkt # 34). That motion was granted, in part, because plaintiff had not tied any of his allegations to any specific cause of action or any specific defendant (Dkt # 63). Plaintiff has cured those defects. The amended complaint

REPORT AND RECOMMENDATION- 1

specifies which defendants and what facts are germane to each cause of action. See, amended complaint (Dkt. # 66). The amended complaint is 67 pages long and contains many pages of unnecessary and confusing information. This information concerns allegations of prior conduct that are not part of this action. In addition, the complaint mentions numerous persons who are not named as defendants in this action. Some of those persons were named in a prior state action.

FACTS

These facts are drawn from the Washington State Court of Appeals published opinion in Calhoun v State of Washington, (Dkt. # 81, Exhibit 6). Plaintiff has been detained as a pre trial detainee, pending civil commitment proceedings, since July 17, 2002. In 2004, he began working in the maintenance department under William Hutterman (Dkt. # 81, Exhibit 6, published opinion of the Washington Court of Appeals, page 2). On September 15, 2004, Mr. Hutterman wrapped a length of chain around plaintiff's waist and made a racially derogatory remark to plaintiff (Dkt. # 81, Exhibit 6, published opinion of the Washington Court of Appeals, page 2). (Mr. Hutterman is not a named defendant in this action).

Plaintiff initially refused to file a complaint or grievance regarding the chain incident. However, he disclosed the incident to other employees at the Special Commitment Center. Those employees informed their superiors of the incident. Although several employees attempted to speak with Mr. Calhoun about the incident, he refused to make further disclosures.

On October 23, 2004, Mr. Calhoun sent a letter to Superintendent Richards complaining of the incident. Mr. Calhoun admitted he refused to discuss the incident with several SCC employees including Weeks, Stepanek, and Ramseth. (None of these persons except Henry Richards are named in this action).

Even though plaintiff had refused to discuss the incident with Associate Superintendent Rasmeth, Mr. Rasmeth attempted to conduct an investigation regarding the incident. Superintendent Richards requested a separate investigation by the Department of Social Health Services, Human Resource Division, Equal Opportunity Section (HRD). An investigation was commenced by HRD in November of 2004. In May of 2005, HRD sent letters to Dr. Richards and Mr. Calhoun informing

REPORT AND RECOMMENDATION- 2

them it had substantiated Mr. Calhoun's allegations regarding the chain incident and remedial steps would be taken. Dr. Richard's then formally disciplined Mr. Hutterman for violating SCC policy regarding inmate abuse.

Mr. Calhoun filed an action in state court on July 31, 2006. The named defendants in that action were:

1. The State of Washington.
2. Dr. Henry Richards.
3. Alan McLaughin.
4. Dr. Vince Gollolgy.
5. Theodore (Ted) Sparkhul.
6. William Hutterman.
7. B. Fyre.
8. Darold Weeks.
9. Rick Ramseth.
10. Kevin Trotter.
11. John Does 1 through 20.

The allegations in the complaint were based on violations of Washington tort law and a number of Washington Statutes. This concludes the facts taken from the published opinion of the Washington Court of Appeals. The defendants have referred to the state action as Calhoun I and the Federal Action as Calhoun II. The court finds this designation helpful and adopts it.

Defendants argue the state action alleged:

> [A] conspiracy existed to treat him in a discriminatory fashion while at the SCC. [*Attachment B*] Calhoun alleged several torts under Washington State law pursuant to RCW 49.60.030, RCW 19.86.090, and RCW 9A.36.083, the common law tort claims of assault and battery, false imprisonment, retaliation, intentional infliction of emotional distress (outrage), and negligence. *Id*. The complaint dealt with Calhoun's perceived mistreatment while at the SCC from July 17, 2002, through November 2005. *Id*. at p. 4-11. The allegations in the original complaint dealt with dates from July 2002 through November 2005. [*Attachment B*, ¶¶4.1-4.21]. Calhoun I alleged plaintiff was discriminated against due to his race, and also alleged that he was being retaliated against for complaints against staff. *Id*. at ¶¶5.15-5.18. Calhoun I consistently took the position that the discrimination was negligent or "intentional",

REPORT AND RECOMMENDATION- 3

and was by individuals and "collectively" orchestrated. *Id.* at ¶¶5.21. Calhoun I stated that the conduct of SCC employees was motivated by racial discrimination and retaliation for his "whistleblower" activities. *Id.* The defendants consisted of the State of Washington, DSHS, SCC Superintendent Dr. Henry Richards, seven individually named SCC employees, and twenty "John Doe" defendants. *Id.* at 1, ¶¶3.1-3.11.

Two months later, plaintiff filed an Amended Complaint for Damages in Calhoun I. [*Attachment C*] In this amended filing, a ninth defendant was added and the time span for the factual allegations was expanded to include acts through **April of 2006**. *Id.* at p. 11-13, ¶¶4.22-4.26. New causes of action were added, including abuse of a vulnerable adult (RCW Ch. 74.34) and official misconduct (both under RCW Ch. 74.34). *Id.* at p. 13-15, ¶¶5.1-5.7.

(Dkt. # 81, motion for judgment on the pleadings, pages 3 and 4, (emphasis added)).

The State Superior Court dismissed all claims with prejudice on July 27, 2007, (Dkt. # 81, page 4). Plaintiff appealed the dismissal of his action and while that appeal was pending he filed this action in federal court.

The Defendants listed in the amended complaint in Calhoun II are:

1. The Washington State Department of Social Health Services Special Commitment Center, DSHS/SCC.
2. Dr. Henry Richards.
3. Steven Galbraith.
4. Durmont Anderson.
5. David O'Connor.
6. Randy Pecheos.
7. James Fowler.
8. James Anderson.
9. Cheryl Norko.
10. Byron Eagle.
11. Walter Weinberg.
12. Crystal Dixon.
13. Susan O'Leary.
14. Bridget Burgess.

REPORT AND RECOMMENDATION- 4

Plaintiff alleges retaliation for his filing grievances against Mr. Hutterman and for his filing Calhoun I. Some of the actions complained of occurred prior to April of 2006, and some occurred later in 2006, and 2007.

The date, April 2006, has significance as the state court in Calhoun I allowed plaintiff to amend his complaint to include incidents and defendants through April 2006, (Dkt. # 81 motion for judgment on the pleadings pages 3 and 4). Plaintiff admits in the amended complaint in Calhoun II that part of the claims in Calhoun I dealt with retaliation (Dkt # 66, page 22, ¶ 81).

Defendants move for judgment on the pleadings and argue:

1. This action is barred by the final judgment entered in Calhoun I. (This argument encompasses sections regarding full faith and credit, claim preclusion, res judicata, and defensive collateral estoppel).

2. Statute of limitations.

3. The court lacks jurisdiction under the Rooker-Feldman/ Mothershed doctrine and should decline jurisdiction under the Younger abstention doctrine. Further, immunity under the eleventh Amendment exists as to defendants DSHS and Henry Richards.

4. Failure to state a claim.

(Dkt. # 81)( the court has changed the order in which the arguments were raised).

## STANDARD OF REVIEW

Defendants argue a recent supreme court case, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), has modified the standard of review. Prior to Bell a 12 (c) motion would be considered under the same standard as a 12 (b)(6) motion. Under the old standard, a court should dismiss a claim under Fed. R. Civ. P. 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir. 1983), citing; Conley v. Gibson, 355 U.S. 41, 45-56 (1957). Dismissal for failure to state a claim may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. Keniston v. Roberts, 717 F.2d 1295 (9th Cir. 1983).

The court in Bell states that the often cited language in Gibson "it appears beyond doubt that

REPORT AND RECOMMENDATION- 5

the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief," should not be read literally. The court espouses that to apply the language from Gibson literally eviscerates the possibility of a rule 12 dismissal.

The statements made by the supreme court are well taken and worth noting. Fed. R. Civ. P. 12 motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. Keniston v. Roberts, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1964-65 (2007)(internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

## DISCUSSION

1. <u>Full Faith and Credit, Claim Preclusion, Res Judicata, and Defensive Collateral Estoppel</u>.

In Calhoun I the superior court dismissed all claims with prejudice. Plaintiff admits the claims dealt not only with the chain incident itself, but also with allegations of retaliation. ( Dkt. 66, page 81, ¶ 81). Defendants state plaintiff was allowed to amend his complaint in Calhoun I to include issues and defendants through April of 2006 (Dkt. # 81, page 4).

Final judgment in Calhoun I was entered July 27, 2007. The federal court must honor the judgment to the same extent that a Washington court would honor the judgment. The Full Faith and Credit Act, 28 U.S.C. § 1738, requires us to "give the same preclusive effect to a state-court judgment as another court of that State would give." Palomar Mobilehome Park Ass'n v. City of San

REPORT AND RECOMMENDATION- 6

Marcos, 989 F.2d 362, 364 (9th Cir 1993).

In Washington, under the doctrine of claim preclusion, plaintiff is barred from re-litigating any ground for or defense to recovery that was previously available to the parties, regardless of whether or not they were raised. Robi v Five Platters Inc., 838 F.2d 318, 321-322 (9th Cir. 1988). Thus, no claim or issue prior to May 2006, survives the motion for judgment on the pleadings.

Defendants argue even claims arising since May 2006 are barred because "all claims between the same parties arising out of the same operative facts must be determined in one lawsuit." (Dkt. # 81, page 7 citing Longnecker v. Brommer, 59 Wn.2d 552 (1962). The court believes this argument over simplifies the facts in Calhoun II. Only two of the named defendants in Calhoun II were defendants in Calhoun I. They are Henry Richards and the State of Washington. Further, while both actions begin by discussing the chain incident, Calhoun I litigated that issue. Calhoun I also litigated claims of racial discrimination and retaliation through April of 2006. There are claims and defendants in Calhoun II that were not addressed. These claims involve allegations of retaliation and specific instance that have occurred since April of 2006. These claims could not have been maintained in the first action and are not barred.

Defendants remaining arguments carry little or no weight. Defendants argue that evidence of later actions does not defeat res judicata. This argument disregards the fact that the evidence involves persons who were not defendants in Calhoun I and incidents that had not taken place prior to April 6, 2006. These incidents stand alone as possible acts of retaliation. Defendants also argue that under the doctrine of defensive collateral estoppel the defendants in Calhoun II are entitled to dismissal. For defensive collateral estoppel to apply the issue must be identical. Parklane Hosiery Co. V. Shore, 439 U.S. 322 (1979). Here, the alleged incidents that occurred after April 2006 were not part of Calhoun I. Defensive collateral estoppel is not available as to these claims, and the issues have not been adversely decided against the plaintiff.

All claims that involve incidents prior to May 2006, should be dismissed with prejudice as plaintiff either litigated the claims, or had the opportunity to litigate them and did not do so. Claims for incidents from May 1, 2006, to the present should be allowed to proceed if they independently

REPORT AND RECOMMENDATION- 7

state a cause of action.

2. <u>Statute of limitations</u>.

42 U.S.C. § 1983, the Civil Rights Act, contains no statute of limitations. The statute of limitations from the state cause of action most like a civil rights act is used. Usually this is a state's personal injury statute. In Washington a plaintiff has three years to file a civil rights action. <u>Rose v. Rinaldi</u>, 654 F.2d 546 (9th Cir 1981).

This action was filed February 14, 2008 (Dkt. # 1). Thus, any claim that involves an incident prior to February 14, 2005 is time barred. As the court has recommended dismissal of incidents prior to April 2006 on the grounds that they could have been litigated in Calhoun I, the court will not further discuss the statute of limitations.

3. <u>Lack of Jurisdiction under the Rooker-Feldman/ Mothershed doctrine, the Younger abstention doctrine, and immunity under the Eleventh Amendment</u>.

A. <u>Rooker-Feldman/Mothershed</u>.

As defendants note:

> The *Rooker-Feldman* doctrine precludes a federal court from asserting subject matter jurisdiction over claims previously adjudicated in a state court, or evaluating constitutional claims inextricably intertwined with a State court's prior decision. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S. Ct. 1303, 1314, 75 L. Ed. 2d 206 (1983); Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923). *Rooker-Feldman* is a jurisdictional rule derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court . . . ." Id. A district court engages in impermissible appellate review when it entertains a claim that the litigants did not argue in the state court, but is inextricably intertwined in the state court judgment. *Feldman*, 460 U.S. at 483 n.16. In order to determine whether a claim is inextricably intertwined with a State court claim, the federal court must analyze whether the relief requested in the federal action would effectively reverse the state court decision or void its ruling. *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997).

(Dkt. # 81, pages 15 and 16). This argument makes sense with regard to any incident that was litigated in Calhoun I. It does not preclude the court from considering incidents after April of 2006. This is because the persons named in those incidents were not defendants in Calhoun I, and the incidents are separate and distinct. Thus, consideration of the later claims will not effectively reverse the state court decision.

REPORT AND RECOMMENDATION- 8

B. Younger abstention.

In the claim for relief section of the amended complaint plaintiff asks the court to enjoin defendants from "retaliating against plaintiff through sham SCC administrative processes and policies used only to harass, retaliate against, and punish plaintiff until further order of the Court."(Dkt. # 66, page 65 ¶ 215).

Defendants view this overly broad and vague request as possibly obstructing defendants from housing and treating plaintiff. The defendants argue:

> Plainly, this relief would wreak havoc with the ability to house and treat plaintiff Calhoun, as the relief is so vague that any interaction with him by SCC personnel could be characterized as retaliation, harassment, or punishment. "[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the State courts." *Drury v. Cox*, 457 F.2d 764, 764-65 (9th Cir.1972) (per curiam) Where a person is detained by a sovereign state while awaiting his civil commitment hearing under the sexually violent predator statutes, and that person seeks a federal injunction that would effectively stay, disrupt, or terminate the upcoming State proceeding by rendering that sovereign state powerless to control, treat, or monitor the detainee without fear of violating a court order, then comity weighs heavily in favor of abstention by the federal court.

(Dkt. # 81, page 19). Defendant's fears are misplaced. No injunction has been entered in this action. Further, a request for injunctive relief has not been placed before the federal court in proper form as a motion. Defendants' position on this point is untenable. Should an injunction that does adversely affect the state be proposed, the defendants may raise this issue.

C. The Eleventh Amendment.

Neither states nor state officials acting in their official capacities are persons for purposes of 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 48, 71 (1989). This rule applies equally to state agencies. See Kaimowitz v. Board of Trustees of the Univ. of Ill., 951 F.2d 765, 767 (7th Cir. 1991); Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991). Because they are not persons within the meaning of § 1983, plaintiff has not stated a cause of action against the Department of Social Health Services or the Special Commitment Center. This entity is entitled to dismissal.

To determine if the other entity claiming Eleventh Amendment immunity, Dr. Richards, is

REPORT AND RECOMMENDATION- 9

entitled to immunity the court must consider the allegations against him and determine if he has acted outside of his official capacity in such a manner as to be liable in his personal capacity.

The first allegation the court finds in the amended complaint is on page 15, ¶ 54. Plaintiff alleges he wrote a letter to the defendant as Superintendent of the SCC. Nothing in this allegation shows defendant Richards to be acting improperly or outside of his official capacity. The next allegation is on page 20, ¶ 71 where plaintiff alleges he was told his request to refer Mr. Hutterman for criminal charges was being sent to Dr. Richards. Again, nothing in this allegation would show Dr. Richard to be acting improperly or outside of his official capacity. The next allegation is on page 21, ¶ 78 and 79. Plaintiff alleges that on December 20, 2005, plaintiff received a letter from Defendant Richards asking the nature of the crime plaintiff believed Mr. Hutterman had committed. Nothing in this section shows defendant Richards to be acting improperly or outside the scope of his official capacity.

The final allegations are on page 39, ¶'s 134 and 135. Plaintiff alleges he received two communications from Dr. Richards, one reversing a finding of guilt on a Behavioral Management Report, BMR, and one commending him for his behavior during a recent non routine search of the facility in January of 2007. Again, nothing shows this defendant to be acting improperly or outside his official capacity. Defendant Richards is entitled to Eleventh Amendment immunity. Plaintiff may not seek damages against this defendant. Dr. Richards should remain in this action only for purposes of possible injunctive relief.

  4. <u>Failure to state a claim</u>.

  A. <u>Retaliation</u>.

To establish a retaliation claim, plaintiff must show that he was retaliated against for exercising constitutional rights, and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff has the burden of showing that retaliation was the substantial or motivating factor behind the conduct of the official and that the alleged retaliatory acts did not advance the legitimate goals of the institution or were not

REPORT AND RECOMMENDATION- 10

narrowly tailored to achieve such goals. Mt. Health City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Thomas v. Carpenter, 881 F.2d 828, 830 (9th Cir. 1989), cert. denied 494 U.S. 1028 (1990).

Plaintiff alleges he complained of Mr. Hutterman's improper conduct and filed an action against him. Plaintiff alleges the named defendants in this federal action then took retaliatory actions against him. His allegations include details as to how each defendant acted (Dkt # 66, amended complaint). The retaliation claim survives at this stage of the proceedings. The court will address each remaining defendant and consider if the allegations are sufficient as to that defendant later in this Report and Recommendation.

B. Racial animus, conspiracy and claims other than retaliation pursuant to 42 U.S.C. 1983.

Plaintiff attempts to bring a cause of action pursuant of 42 U.S.C. 1985 for conspiracy to violate his rights. Along with the 42 U.S.C. 1985 claim he attempts to raise a 42 U.S.C. 1986 claim for failure to prevent a conspiracy. To state a conspiracy claim plaintiff has the burden of pleading the actions taken against him were based on some class-based factor such as racial animus. Plaintiff fails to plead facts to support a conspiracy claim. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir.1992); Griffith v. Breckenridge, 403 U.S. 88, 102 (1971). Post Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), plaintiff must plead facts in support of a claim and a bare allegation or recital of elements of a claim does not suffice.

Plaintiff's facts do not support a claim for conspiracy based on racial animus. To be sure, the original chain incident and remarks by Mr. Hutterman can be depicted as class based racial animus. Even assuming plaintiff's allegation to be true, he does not plead facts of a further conspiracy based on racial animus (Dkt # 66).

Plaintiff's repeated statements that he saw defendants talking, or that they made comments during hearings such as "Just because this guy has a couple of complaints against these people, we've got a job to do" simply does not rise to the level of showing any form of conspiracy based on racial animus. In their normal job duties these people need to converse and share information.

Plaintiff also attempts to pursue this action under 42 U.S.C. 1997. This section of the United

REPORT AND RECOMMENDATION- 11

States Code does not create a private cause of action. 42 U.S.C. 1997 allows the United States Attorney General to bring or intervene in an action based on abuse of an institutionalized person.

Plaintiff cloaks his causes of action as being within the penumbra of his rights under the Fourth, Fifth, Eight, and Fourteenth Amendments. Review of the amended complaint shows plaintiff to state facts that give rise to a cause of action for retaliation pursuant to 42 U.S.C. 1983 under the First Amendment. <u>Defendants are entitled to dismissal of all other claims</u>.

C. <u>Defendants and claims remaining</u>.

Having recommended granting in part the motion for judgment on the pleadings, it would be wise to clarify for the Honorable Judge Leighton and the parties what claims and defendants remain. This entails and in-depth look at the amended complaint. The court will also address the final argument raised by the defendants, failure to state a claim.

The only remaining claim is that defendants retaliated against plaintiff for filing a prior action and complaining about Mr. Hetterman's conduct.

    1.    *<u>The State agencies, DSHS and SCC</u>*.

Claims against the DSHS and the SCC do not survive Eleventh Amendment scrutiny.

    2.    *<u>Dr. Henry Richards</u>*.

Claims for damages against defendant Richards do not survive Eleventh Amendment scrutiny. Defendant Richards is still the proper party in his official capacity for possible injunctive relief.

    3.    *<u>Steven Galbraith</u>*.

The claims against defendant Galbraith are found in ¶'s 98, 103, 112, and 113. The ¶ 98 allegations are that a search of plaintiff's room on July 2006, was ¶retaliatory and that defendant Galbraith ordered the search. Plaintiff further alleges defendant Galbraith ordered a UA that was retaliatory. Plaintiff also alleges defendant Galbraith authored a Behavioral Management Report, BMR in December or 2006, for willful interference that was retaliatory. The finding of guilty on this BMR was later overturned by Dr. Richards. These allegations regard incidents that occurred after April of 2006. These allegations against defendant

REPORT AND RECOMMENDATION- 12

Galbraith remain in this action.

4. *<u>Durmont Anderson</u>*.

The claims against defendant Durmont Anderson are found in ¶'s 96, 107, 118 and 124. Plaintiff claims the July 2006, room search was retaliatory; that defendant D. Anderson ordered staff not to let plaintiff speak with supervisors other than D. Anderson or Galbraith; and that D. Anderson ordered plaintiff start serving sanctions on BMR before the appeal period had run. All of the incidents occurred after April 2006. These incidents and D. Anderson remain in the action.

5. *<u>David O'Connor</u>*.

The claims against Defendant David O'Connor are found in ¶ 90 to 92. This incident involves plaintiff calling a meeting of managers he was not having a problem with. The meeting was held April 10, 2006. Plaintiff asked these managers to address his concerns that he was being retaliated against for filing his legal action. Plaintiff alleges defendant O'Connor became visibly upset and questioned him concerning his allegations of retaliation. Plaintiff was infracted, received a BMR, for calling this meeting. Defendant O'Connor is not properly a defendant based on this incident as he fails to plead facts showing defendant O'Connor harbored any improper motive.

Plaintiff also alleges Defendant O'Connor also played a part in ordering the room search in July of 2006 (Dkt # 66, ¶ 99). Defendant O'Connor remains in this action based solely on this allegation.

6. *<u>Randy Pecheos</u>*.

The claims against Defendant Randy Pecheos are on page 35, ¶ 123. This paragraph reads:

> Mr. Eck and Mr. Lang worked out an agreement which was approved by Defendant Richards, where the Defendants GALBRAITH, D. ANDERSON, PECHEOS, and FOWLER would cease and desist retaliating against PLAINTIFF and for the remainder of the legal proceedings would not have any control over PLAINTIFF'S room being searched, PLAINTIFF being U.A.'d, and that WEINBERG would have to make decisions concerning any BMR's written on

REPORT AND RECOMMENDATION- 13

plaintiff. In Addition, all sanctions handed down in the willful
interference BMR would be suspended pending all legal proceedings.

(Dkt. # 66, ¶ 123). There are no facts as to any action taken by defendant Pecheos. The amended complaint contains nothing but a conclusory statement. "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). Defendant Pecheos is entitled to dismissal from this action.

7.   *James Fowler*.

The claims against Defendant James Fowler begin on page 22, ¶ 83. Plaintiff alleges Mr. Hutterman was in his living unit on January 19, 2006, and made a "sarcastic disparaging remark." Plaintiff alleges he asked Fowler to have Hutterman's supervisor come to the unit. Plaintiff alleges he then told the supervisor and Fowler of Hutterman's allegedly improper conduct. There is no allegation defendant Fowler acted improperly or retaliated and this paragraph fails to state a claim.

Defendant Fowler is again mentioned with regards to a BMR hearing for willful interference written by defendant Galbraith (Dkt. # 66, ¶'s 113 to 117). Plaintiff alleges defendant Fowler was one of the hearing officers, and that defendant Fowler made the comment "Just because this guy has a couple of complaints against these people, we've got a job to do!" Plaintiff fails to show defendant Fowler harbored an improper motive or retaliated against the plaintiff. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

Defendant Fowler is again mentioned in ¶'s 123 and 124. ¶ 123 was quoted *supra*. In ¶ 124 plaintiff alleges the day after the agreement he saw Mr. Weinberg speaking with defendants Galbraith, D. Anderson, and Fowler and that Fowler "looked visibly upset."

REPORT AND RECOMMENDATION- 14

Plaintiff fails to show defendant Fowler harbored an improper motive or retaliated against the plaintiff. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). Defendant Fowler is entitled to dismissal from this action.

8.   *Defendants James Anderson, Cheryl Norko, and Byron Eagle*.

The claims against defendants J. Anderson, Cheryl Norko, and Byron Eagle may be considered together. The allegations begin on page 36 ¶ 125 and continue through page 39 ¶ 134. Plaintiff alleges that on January 23, 2007, the unit he lives in at the SCC was subject to a non routine search. He was moved to a maximum security unit, by defendants Norko, J. Anderson, and Eagle. Plaintiff does not contend any of these persons made the decision that he was one of the residents who would be moved. Nor does he make any allegation that any of these persons harbored an improper motive or acted improperly during the move. Plaintiff infers, but does not specifically state, that not all residents in the unit were moved.

Plaintiff fails to show any of these named defendants harbored any unconstitutional reason for moving him or that any of these defendants played any part in deciding which residents would be moved to a higher security area during the search of that living unit. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

Defendant Eagle is also mentioned in ¶ 111. Plaintiff alleges that on January 3, 2007, he refused to take a U.A., and was then handcuffed and taken to IMU while his room was searched. Plaintiff alleges his room was left in disarray. He alleges he went outside the unit to try and get a supervisor who was not defendant Galbraith or defendant D. Anderson look at his room. He alleges he asked supervisor Eagle to come look at his room, and despite Mr. Eagle saying he would be right down he did not come to the unit. Plaintiff fails to show

REPORT AND RECOMMENDATION- 15

defendant Eagle had any constitutional obligation to speak with him or acquiesce to his request.

Plaintiff does not allege defendant Eagle played any part in either the decision to U.A plaintiff or the room search. Plaintiff has failed to state a claim against any of these three defendants. <u>Defendants J. Anderson, Cheryl Norko, and Byron Eagle are entitled to dismissal from this action</u>.

9. <u>*Walter Weinberg*</u>.

The claims against defendant Weinberg are on page 24, ¶ 88. In April of 2006, plaintiff lost his job. He contacted several managers including Weinberg and asked for a meeting. None of the mangers, including Mr. Weinberg answered his letter.

Defendant Weinberg is again mentioned on Page 35 ¶'s 123 and 124. Plaintiff alleges that pursuant to an agreement between Mr. Lang and Mr. Eck, Mr. Weinberg was given the authority to decide if plaintiff should receive any BMRs, and that defendants Galbraith, D. Anderson, and Fowler could no longer write BMRs regarding plaintiffs' conduct. Plaintiff does not allege any misconduct or improper action by this defendant. <u>Defendant Weinberg is entitled to dismissal from this action</u>.

10. <u>*Crystal Dixon*</u>.

The claims against defendant Dixon are page 31, ¶'s 113 and 114. She, along with defendant Fowler, and other persons who are not named as defendants, chaired a BMR hearing where plaintiff was found guilty of willfully interfering with staff. This is a BMR written by defendant Galbraith. The finding of guilt was later overturned. Plaintiff fails to show defendant Dixon harbored an improper motive or retaliated against the plaintiff. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). <u>Defendant Dixon is entitled to dismissal from this action</u>.

REPORT AND RECOMMENDATION- 16

11. *Susan O'Leary*.

The claims against defendant Susan O'Leary begin on page 18, ¶ 66. This incident involved Defendant O'Leary asking plaintiff for a U.A. in August of 2005. When plaintiff complained defendant O'Leary made a phone call and then informed plaintiff he did not need to take the U.A. This incident should not form the basis for a cause of action as the issue could have been litigated in Calhoun I.

Defendant is again mentioned on page 38 ¶ 133 in connection with the non routine search of plaintiff's entire living unit on January 3, 2007. When plaintiff was escorted back from the maximum unit where he was placed during the search, O'Leary and three security officers in riot gear escorted him. There is no allegation defendant O'Leary acted inappropriately or harbored any improper motivation. <u>Defendant O'Leary is entitled to dismissal from this action</u>.

12. *Bridget Burgess*.

The claims against defendant Burgess are found on pages 20 to 23 of the amended complaint. Defendant Bridget Burgess is named as a defendant for terminating plaintiff from his job in early April of 2006. This incident should not form the basis for a cause of action as the issue could have been litigated in Calhoun I. <u>Defendant Burgess is entitled to dismissal from this action</u>.

13. *John and Jane Does*.

John and Jane Does. Plaintiff makes no specific allegations regarding these unnamed defendants and they should be dismissed from this action.

## CONCLUSION

The only claim that should survive the motion for judgment on the pleadings is a claim for retaliation. The remaining defendants are Dr. Richards in his official capacity for possible injunctive relief, and Defendants Galbraith, D. Anderson, and O'Connor.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also*

REPORT AND RECOMMENDATION- 17

Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 20, 2009,** as noted in the caption.

DATED this 28 day of January, 2009.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION- 18